# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TENA GOSS, | : |
| | : |
|     Plaintiffs, | : |
| | : |
| v. | :   Case No.: 2:21-cv-1317 |
| | : |
| GUARDIAN ELDER CARE AT | : |
| LEWISTOWN, LLC d/b/a WILLIAM | :   COMPLAINT IN CIVIL ACTION |
| PENN HEALTHCARE AND | : |
| REHABILITATION CENTER, | : |
| | : |
|     Defendant. | |

Filed on Behalf of Plaintiff:
Tena Goss

Counsel of Record for this Party:
**J.P. WARD & ASSOCIATES, LLC**

Joshua P. Ward
Pa. I.D. No. 320347

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Telephone:  (412) 545-3015
Fax No.:  (412) 540-3399
E-mail:  jward@jpward.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TENA GOSS,** | : |
| **Plaintiffs,** | : |
| v. | : Case No.: 2:21-cv-1317 |
| **GUARDIAN ELDER CARE AT LEWISTOWN, LLC d/b/a WILLIAM PENN HEALTHCARE AND REHABILITATION CENTER,** | : |
| **Defendant.** | : |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Tena Goss, by and through the undersigned counsel, J.P. Ward & Associates, LLC and, specifically, Joshua P. Ward, Esquire, who files the within Complaint against Defendant, Guardian Elder Care at Lewistown, LLC d/b/a William Penn Healthcare and Rehabilitation Center, of which the following is a statement:

## PARTIES

1. Plaintiff, Tena Goss (hereinafter "Ms. Goss"), is an adult individual who currently resides at 603 Electric Avenue, Lewistown, Pennsylvania 17044.

2. Defendant, Guardian Elder Care at Lewistown, LLC d/b/a William Penn Healthcare and Rehabilitation Center (hereinafter "Defendant"), is a business located at 163 Summit Drive, Lewistown, Pennsylvania 15824.

1

**JURISDICTION AND VENUE**

3. This action arises under the Americans with Disabilities Act 42 U.S.C. § 12101, *et seq*. ("ADA"), and the Pennsylvania Human Relations Act 43 P.S. §§ 951-963 ("PHRA"). This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

4. Plaintiff is a resident and citizen of Pennsylvania, a substantial amount of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 25 U.S.C. § 1391(b) and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

5. Plaintiff dual-filed a timely charge with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") regarding his allegations on or about February 5, 2021, under EEOC Charge number 533-2021-00754.

6. On June 4, 2021, Plaintiff was issued a Notice of Suit Rights by the EEOC, and this complaint is now timely filed. A true and correct copy of the Notice is attached hereto, made a copy hereof, and is referenced as "Exhibit A."

**PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS**

7. Ms. Goss began her employment with Defendant in the position of Certified Nursing Assistant ("CNA") on or about March 1, 2020.

8. Ms. Goss suffered from a condition called Hallux Valgus along with prominent bunion knee and mild intermetatarsal bursitis. This disability manifested in extreme pain in Ms. Goss's feet and as a result, Ms. Goss began to experience great difficulty in her major life activity of walking and standing for long periods of time.

9. Ms. Goss attempted to alleviate the pain caused by her disability through receiving a shot from her physician. However, when this attempt was unsuccessful, Ms. Goss's physician informed her that in order to be able to walk on her foot again without a great deal of difficulty, Ms. Goss would need to undergo foot surgery. This surgery included metal pins and a metal plate being placed in Ms. Goss's foot.

10. On or about October 29, 2020, Ms. Goss underwent the abovementioned foot surgery.

11. Shortly thereafter, Ms. Goss was contacted by her supervisor, Emily Gahagan, concerning when she would be able to return to work.

12. Ms. Goss consulted with her physician who advised that she "is cleared to return to light duty with restrictions... must remain [non weight bearing], using a knee scooter, she will also need to keep her foot elevated as much as possible. [Ms. Goss] is able to work 2 hours and take a 15-minute break, for the duration of an 8-hour shift."

13. On or about November 6, 2020, Ms. Goss provided Defendant with the note from her physician.

14. Ms. Gahagan responded, "we usually do not do it, but I am fine with that. It is busy here and we have some staff out so I will take you for whatever you can give."

15. Ms. Goss reported to Defendant, On or about November 8, 2020, ready and willing to work and be provided the reasonable accommodations she had been informed she could receive by Ms. Gahagan.

16. Instead, Defendant denied Ms. Goss's request for "light duty" designation and a knee scooter. However, Ms. Gahagan had never marked Ms. Goss as light duty on the schedule

because of Defendant's policy of not accommodating employees who have not sustained a work-related injury.

17. As a result, Ms. Goss continued to perform the obligations of her position satisfactorily over the following weeks without designated assistance, break time or a light duty designation.

18. On or about December 8, 2020, Ms. Gahagan emailed Ms. Goss and asked how long Ms. Goss was to remain on light duty.

19. Ms. Goss spoke with her physician who advised that she "is to remain on light duty until further notice. [Ms. Goss] may be weight bearing on her foot for 1 hour at a time... is not to move patients unassisted."

20. Upon receipt of this advice given by Ms. Goss's physician, Defendant informed Ms. Goss that she would not be placed on the schedule until she was "full duty."

21. Ms. Goss was confused and bewildered by Defendant's statement because over the previous 6 weeks she was not designated as "light duty" on the schedule, nor she was provided with any reasonable accommodations, yet Ms. Goss satisfactorily performed the duties of her job.

22. Furthermore, Ms. Goss remained on the schedule at that time to work up until December 14, 2020.

23. On or about December 14, 2020, Ms. Goss sent Defendant a copy of her physician's note and reminded Defendant that she was still able to work with some restrictions and "a little help."

24. On the following day, Ms. Gahagan responded with the statement: "I am sorry you still have restrictions."

25. Ms. Goss reminded her superiors at Defendant that "those restrictions do not prevent me from working or doing my job. I am still [allowed] to work... "

26. The conversation continued as Ms. Gahagan stated, "We do not typically allow people with limitations outside of workers compensation to work or take full assignments… I do appreciate your eagerness to work. If she has shifts, she will let you know. We are filling shifts with employees not having restrictions when possible…" This statement indicated that Ms. Goss had been replaced with individuals who did not have disabilities or need for accommodation.

27. Ms. Goss has not received any shifts from Defendant since December 14, 2020 and therefore was effectively terminated from her position.

## COUNT I
## DISCRIMINATION IN VIOLATION
## OF THE ADA AND THE PHRA

28. Ms. Goss incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

29. The inquiry into whether a person is disabled under the ADA is made on a case-by case analysis. *EEOC v. Grane Healthcare Co.,* 2 F. Supp. 3d 667, 694 (W.D. Pa. 2014); *Chedwick v. UPMC,* 2011 U.S. LEXIS 43239 *35 (W.D. Pa. 2011). To establish a prima facie case of discrimination under the ADA, Plaintiff must show: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodations by the employer; and (3) she suffered an otherwise adverse employment decision as a result of discrimination. *See McGarvey v. Te Connectivity, Ltd.,* 2018 U.S. Dist. LEXIS 124788 *15 (M.D. Pa. 2018); *Northern v. Susquehanna Univ.,* 2018 U.S. Dist. LEXIS 214349 *28 (M.D. Pa. 2018).

30. The PHRA is modeled similarly to the ADA and shares similar burdens. The analytical framework used to evaluate a disability discrimination claim under the PHRA is

effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds. *Bialko v. Quaker Oats Co.*, 434 F. App'x. 139, 142 n.5 (3rd Cir. 2011) (citing *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) (noting that the PHRA, in all "relevant respects," was "basically the same as the ADA" and was interpreted "in accord" with the ADA and related case law, thus meaning that "disposition of [plaintiff's] ADA claim applie[d] with equal force to his PHRA claim."

31. Under the ADA, an individual has a disability if she: (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. *Thomas v. Trs. Of the Univ. of Pa.,* 2020 U.S. Dist. LEXIS 11056 *9 (E.D. Pa. 2020) (quoting *Lackey v. Heart of Lancaster Reg'l Med. Ctr.,* 704 F. App'x 41, 48 (3d Cir. 2017)).

32. Under the ADAAA, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Berkowitz v. Oppenheimer Precision Prods.,* 2014 U.S. Dist. LEXIS 152533 at *8-9 (E.D. Pa. Oct. 28, 2014).

33. Ms. Goss is readily disabled within the meaning of the ADA and the PHRA.

34. Ms. Goss was qualified to successfully perform the necessary functions of her position, and did so from November 8, 2020, until Defendant removed her from the schedule on December 14, 2020.

35. Defendant was fully aware of Ms. Goss's disability and her qualification for the position which she performed.

36. Even so, Defendant admitted that Ms. Goss was replaced by employees who "did not have restrictions" due to disabilities.

37. The removal of Ms. Goss's hours effectively terminated her and represents a clear adverse action in connection with Ms. Goss's disability.

38. As set forth hereinabove, the Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Tena Goss, hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

## COUNT II
## FAILURE TO ACCOMMODATE IN
## VIOLATION OF THE ADA AND THE PHRA

39. Ms. Goss incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

40. To prevail on a claim of failure to accommodate, Plaintiff must establish that "(1) the employer knew about [her] disability; (2) he requested accommodations or assistance for [her] disability; (3) the employer did not make a good faith effort to assist him in seeking accommodations; and (4) [s]he could have been reasonably accommodated but for the employer's lack of good faith." *Tourtellotte v. Eli Lily & Co.*, 636 F.App'x 831, 849 (3d Cir. 2016) (internal citations omitted)

41. Ms. Goss made Defendant aware of his disabilities, and therefore Defendant possessed knowledge of Ms. Goss's disabilities.

7

42. Ms. Goss requested reasonable accommodations for her disability in the form of light duty restrictions.

43. These restrictions included the temporary use of a knee scooter, 15-minute breaks every 2 hours to elevate her foot, and some assistance when moving patients.

44. In lieu of making reasonable accommodations for Ms. Goss's disability, Defendant, by and through Ms. Goss's supervisors, refused to allow her to work with light duty restrictions.

45. Defendant removed Ms. Goss from the schedule on December 14, 2020, directly following this accommodation request. Ms. Goss was never put back on the schedule and therefore was effectively terminated from her position.

46. Therefore, Defendant failed to make a good faith effort to assist Ms. Goss in seeking reasonable accommodations and instead replaced Ms. Goss with an employee who did not require reasonable accommodations.

47. Ms. Goss could have been readily and reasonably accommodated by Defendant for her disability, however Defendant failed to provide even a modicum of good faith or a willingness to engage in the accommodations process.

48. As a direct and proximate cause of the aforementioned conduct, Ms. Goss suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

49. As set forth hereinabove, Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience, such that the imposition of punitive damages are appropriate.

WHEREFORE, Plaintiff, Tena Goss, hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay,

front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

## COUNT III
## RETALIATION IN VIOLATION
## OF THE ADA AND THE PHRA

50. Ms. Goss incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

51. The ADA prohibits employers from retaliating against employees. 42 U.S.C. § 12203(a). To establish a claim for retaliation, Plaintiff must prove: (1) a protected employee activity; (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004); *Lackey v. Heart of Lancaster Regl. Med. Ctr.*, 704 Fed. Appx. 41, 49–50 (3d Cir. 2017).

52. Ms. Goss engaged in the protected employee activity of requesting reasonable accommodations.

53. Following Ms. Goss's requests for reasonable accommodations, Ms. Goss was removed from the schedule and her position was replaced.

54. This took place immediately following Ms. Goss's request for reasonable accommodations.

55. Defendant's actions can only be viewed as retaliatory and possessing a causal connection against Ms. Goss due to her requests for reasonable accommodations.

56. As a direct and proximate cause of the aforementioned conduct, Ms. Goss suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

57. As set forth hereinabove, the Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff, Tena Goss, hereby requests this Honorable Court consider the above and grant relief in her favor. Specifically, Plaintiff requests this Court award her back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, costs, and reasonable attorney's fees.

**JURY TRIAL DEMANDED**

                                                                                  Respectfully submitted,

                                                                                   **J.P. WARD & ASSOCIATES, LLC**

Date: October 1, 2021                             By: */s/ Joshua P. Ward*
                                                                                   Joshua P. Ward (Pa. I.D. No. 320347)
                                                                                   Kyle H. Steenland (Pa. I.D. No. 327786)

                                                                                   J.P. Ward & Associates, LLC
                                                                                   The Rubicon Building
                                                                                   201 South Highland Avenue
                                                                                   Suite 201
                                                                                   Pittsburgh, PA 15206

                                                                                  Counsel for Plaintiff